Good morning my name is Karen Unger and I'm here for Mr. Skiles. I'm sure that you've read my brief and my argument is pretty limited. Basically based on my client's review of the application for the federal firearms license which was attached to my brief and submitted a trial as an exhibit along with the our position was there was insufficient evidence to believe that he is guilty as charged. Basically my client sold guns at gun shows. And it's kind of ironic because this is an issue that is just so much in the forefront now. And I personally have never had a gun in my life. So my client was a gun collector had previously had a valid federal firearms license. When he went to renew it his testimony was that one of the questions on the application is do you intend to sell firearms only at gun shows? And if the answer to that was yes on the application it says do not submit application. Now I'm confused about that. As I read the testimony this was on a later form rather than on the application. So am I mistaken in that point? Sorry to say but yes. Okay so point me to that testimony then that supports what you're saying. Where on the record? I couldn't do that standing here now your honor. I apologize. I don't I'd have to go grab it and look through it to find it if you'd like me to do that. That would be useful to me. Yes. Okay. I know my clock is ticking but I really that's the whole issue here is whether or not. Well if it's the whole issue I think I better see it. Okay. If you think that would be something you'd have at your fingertips if that's the most pivotal point in this case. You're right your honor and I apologize. That's okay now don't let us make you nervous. Well it might not be that important though really. Well the point is Wait a minute. The point is we're not talking about a jury trial in front of us. We're talking about a jury trial. There was a lot of evidence in front of the jury. This might be a piece of evidence but don't we review the evidence most favorable? Yes your honor. When the I believe it was the first witness that the government called was somebody who had met with Mr. Skiles when he initially obtained his original federal firearms license and testified about how she had gone over the application with him and I believe the point the government was attempting to make was that Mr. Skiles was aware of what his obligations were in order to sell firearms and if he was intending to sell them for profit and livelihood then he was aware of that responsibility based on what was discussed with him when he obtained his initial federal firearms license. Now let's talk about the rest of the evidence. We have the testimony from his partner that they both knew what they were doing was illegal. We have that. That's in front of the jury. We have a very large number of guns being purchased by him to be sold as a profit. We have that. Every single one of those times when he signed on those forms, that form says if you're selling things repetitively it's illegal, you need a license. So he's being told that every single time he does it. There's a lot of other stuff. He had the original license and when he was telling the agent who was pretending to want to know how to get into this interesting little business, he didn't say you know you don't need it if you're selling firearms shows. He said no it's just too much hassle to bother with a license. That's why he didn't renew it. Clever. The smart thing to have said then if it was really true was well I knew you don't need one. Nobody needs one when you're going to sell it. It doesn't matter how many you sell or how you sell or what you do. It's all okay. That's just a few of the things. The jury's got all that evidence in front of it now. So you've got that piece of evidence. We've got all this other evidence. The jury did not find in his favor. That's correct, Your Honor. So how does that mean there's not sufficient evidence to support the jury's verdict? They didn't believe him. The jury did not believe him. They believed all the other evidence in the case. My position in the brief that I wrote was that the definition of livelihood and profit was something that was not established by the government. There's no definition of what is livelihood and profit and that was Mr. Skiles' whole position was that he didn't do this to make a living at it. He did it as a hobby. He didn't tell an agent that he made a living that way. He said with this and my disability and something else, that's how I make my living. And he said if you want to help me yourself make a living, here's how you do it and here's a guy who can tell you my partner here is a great teacher on how you can make income doing this. Isn't that true? Your Honor, you've clearly read the record. You're clearly familiar with this case. My client's position throughout the trial, and I raised this in my brief, was that number one, the application that he was expected to or that he was required to fill out if he was going to have a federal firearms license does say in there that if you intend to sell this at gun shows, you don't need to fill out this application. Now whether that's right, wrong or indifferent, that's what the application says on its face. Counsel, is that application in the record? It is, Your Honor. And it is somewhat confusing, I have to admit. I was at the trial. I know what my client's testimony was. I know what the testimony of the agents were and I'm not trying to present something that didn't happen. So do you know precisely who in the record we can find the form? I believe it was attached as an exhibit. And in fact, I got a call from somebody from the Ninth Circuit trying to make sure that that exhibit was provided. And the government, I believe it was one of their exhibits and they had transmitted it up to the Ninth Circuit. So it is there. And again, Your Honor, I apologize. Is it attached in any part of the excerpts of record? Yes, I believe it is. Do you know where in the excerpts of record? Well, I have it right there in front. I have it with me. Okay. And I can, but I do know that because it's pivotal in a sense. This whole thing, the whole statute is somewhat confusing. I am not trying in any way, shape or form to say my client was not at gun shows selling guns and that he didn't sell a lot of guns and they didn't buy a lot of guns from a registered firearm agent. The government chose to attend these gun shows and try to find people that they felt were illegally selling guns without a firearms license. Let me say what bothers me about this case is, I mean, I'm inclined to agree with Judge Fernandez' line of questioning. There was a lot of evidence adverse to your client that jury, I think, could legitimately have relied upon to say, well, maybe that's what the form says, but you nonetheless knew what the right rule was. What bothers me about this case is if we've got a form out there that is so fundamentally misleading, whether it misled your client, it might very well mislead others. I mean, the form sounds to me as though it's just wrong. Your Honor, there usually is a lot of evidence against the defendant when the western district decides to take someone to trial. So I was not surprised at the evidence that the government put forth, but the form does say that, and it is somewhat confusing. And as well as what the statute says, livelihood and profit, what does that mean? It wasn't defined. And my client was disabled. He appeared at the trial in a wheelchair. He testified about where his income came from, and he was convinced that the statute, that he did not fall within the purview of the statute because he didn't do this for livelihood or profit. He did it because he enjoyed going to gun shows, meeting people, and selling guns. Okay. Why don't we hear from the government? Could I just ask one question? Sure. If the form were, in fact, misleading, would that be kind of an estoppel argument against the government? I would think so. I would think it would go to intent. And what my client, ignorance of the law I know is no excuse, but when you have a federal form that says if you intend to sell these guns at a gun show, and frankly, that was my client's big position throughout the whole case was I saw the form, I went to fill it out. It says if I only am going to sell this at a gun show, I don't need to fill this out. All right. And he didn't sell it anywhere else. Okay. Thank you. Thank you very much. Good morning. May it please the Court. John McNeil for the United States. I was going to start with the sufficiency of the evidence argument this morning, but I think I'd rather address the Court's pointed concerns about the form. It was introduced into evidence in this case. For purposes of what's in the record, I would point out the defendant's testimony with respect to this form appears at ER 347, and it goes on for one or two pages. And then it picks up again at ER 351, and it goes on for a few pages. Is the form actually in the excerpts of record? It is not, Your Honor. There's only a single form in the excerpts of record, and that is the form which Mr. Skiles signed on more than 25 occasions, which warned him that if he were engaged in repeated purchase and resale of firearms for profit and livelihood, it would violate the law. That form is in the record at ER, the very last, ER 418. As Judge Fernandez says, there were a great number of documents introduced in this case, and the form that was introduced by the defendant was one of just a number of forms. Now, as Judge Flexer indicated, there is some language in there is not a model of clarity, but there are several points I'd like to make about that. First of all, the form which Mr. Skiles signed, so the form which was really relevant to his intent in this case, didn't have that lack of clarity information in it. That was my impression, which was the point of my question, Ms. Unker. Right. The second point I'd like to make is the record reflects that in 2003 he applied for a federal firearms license, and a witness testified, it was Agent Sherlock, testified from the ATF that she sat down with Mr. Skiles for about two hours, and during the course of that meeting, she explained to him all the federal firearms laws and all the federal firearms regulations, and she had with her a checklist, and that checklist appears at Exhibit No. 5. It's not in the record, but I will submit it, and that checklist lists all of the forms and other provisions of the statute and the regulations which she went over with Mr. Skiles. Now, among the forms that she gave him, and again, that's in the record as Exhibit No. 6, was a form that said, important notice to dealers and other participants at this gun show, and it goes on to say that non-licensed individuals may not be engaged in the business of dealing in firearms without a federal firearms license. So Agent Sherlock testified that she gave to Mr. Skiles this particular form, which clearly indicates to him that he could not engage in the repetitive sale, repetitive purchase and resale of firearms. And that was when? At Livelihood. That was in 2003 when he applied for his federal firearms license. That's when he got a license in the first place. That's right. Okay. Am I mistaken that the form in 2005, not the form that he signed, but the 2005 form said, if you are intending to sell these only at gun shows, you don't need a license? No, it does not say that, Your Honor. What the form says is it says do you intend to sell firearms only at gun shows? Right. And then it gives you a checkbox for yes or no, and then in parentheses it says if yes, do not submit this application. So it's not, I will admit, Your Honor, it's not the model of clarity. No, I think it's quite clear. And I think it's quite clear in misstating the law. I don't think that it saves Mr. Skiles, but I think you've got a problem with your form. Let me, I inquired of ATF about the nature, what was the point of this particular question. And that is. Well, never mind the point. How would you read that? Your lawyer says do you intend to sell firearms only at gun shows? Blank. Yes. If yes, do not submit the application. And the reason for that, Your Honor. So what do I say to myself? Right. Well, the reason for that is because if you do not have a premises, you cannot obtain a firearms license. So the Federal Firearms Licensing Law, 18 U.S.C. 923, requires that every person who has a Federal Firearms License must also have a premises. So if you only are going to sell at gun shows, and that's the only place you're going to sell, you can't get a Federal Firearms License. Now, admittedly, this is not, the form is not the model of clarity. No, I'm going to differ. It is clear and it's wrong. Let me. And it's not going to save Mr. Skiles. But what I'm pointing out is you've got a problem or the government has a problem with the form. Why would we have this form when it is so misleading? I mean, I understand your explanation, but that's not what the form says. It's true. And as I indicated before, this wasn't the form that Mr. Skiles signed. And certainly your comments, Your Honor, will be passed on to the ATF. I'm sure they'll listen to me. But the larger, I think the larger point I want to make about this form is that this was just one of a number of forms that the jury saw. And the jury also saw the form in Exhibit No. 6, a form that he received, there was testimony he received. The jury also saw those purchase forms which appear in the record which warns him, and he signed that form 25 times during the period of his crime, warning him that if you engage in the repetitive purchase and resale of firearms for profit and livelihood, you will be violating the law. So this is essentially, I think, a factual defense that was presented to the jury. The jury had the evidence and rejected it. Are there any other questions? I'm going to relinquish the rest of my time if there are no other questions. Thank you. Thank you. Would you like a minute to respond? My client's whole premise was the form said what it said. He didn't believe he needed a federal firearms license if his only intent was to sell at gun shows. The other issue he pressed with the jury and was his, another centerpiece of his defense was that he wasn't doing this for a livelihood or profit. I saw the tapes, the interviews that took place at the gun shows. We watched them. They were very interesting. But the bottom line is my client, what the government is citing, the statutory requirements of not being able to have a federal firearms license if you don't have a residence where you can sell the guns, none of that was made clear in the form. None of that was made clear anywhere to my client. And his position was, based on the form, based on that he did not do this in his mind for a livelihood and profit, not or. It wasn't livelihood or profit. It was livelihood and profit. He didn't intend to violate any laws because to him the thought of not being able to own or possess a firearm was his greatest nightmare. That's his. But I think he also testified, well, he didn't apply to get a new license because there was just too much paperwork. I agree. He definitely said that. There's no doubt. And that's why he thought if he only sold them at gun shows, he wouldn't have to do it because he used to have a business. And he would prepare guns, and he did have the license then. But when he decided he didn't want to bother with all the paperwork, he read the application. It said you don't need to fill out this application if you're only going to sell it at gun shows. Then he thought, okay, I'll just practice my hobby at gun shows. He felt somewhat secure in who he was selling it to. He testified that people that came to the gun shows were supposed to have been cleared as far as background checks, et cetera. So that's Mr. Skiles. Thank you. Thank you very much. I thank both sides for their argument. The United States v. Skiles now submitted for decision.
judges: Fernandez, Fletcher, Rawlinson